# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| EMORY UNIVERSITY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **CIVIL ACTION** |
| v. | ) | |
| | ) | **No. 1:07-CV-1528-RWS** |
| THE UNITED STATES OF | ) | |
| AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PLAINTIFF EMORY UNIVERSITY'S MEMORANDUM OF LAW
## IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Henry R. Chalmers
(Ga. Bar No. 118715)
ARNALL GOLDEN GREGORY LLP
171 17th Street, N.W., Suite 2100
Atlanta, GA 30363
Telephone: (404) 873-8500
Facsimile: (404) 873-8501

Eric C. Bosset
Brent F. Powell
Kimberly A. Gould
(admitted *pro hac vice*)
COVINGTON & BURLING LLP
1201 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2401
Telephone: (202) 662-6000
Facsimile: (202) 662-6291

October 7, 2008

*Counsel for Plaintiff Emory University*

# TABLE OF CONTENTS

Introduction ................................................................................................1

Summary of Argument ..............................................................................2

Legal Background ......................................................................................5

Standard of Review ...................................................................................7

Argument ...................................................................................................8

I.   Emory Does Not Contest Its *Prima Facie* Employment Tax Liability ..............8

    1.   The Parties Have Stipulated That Emory Employed The Residents. ..........9

    2.   Residents Are Considered Emory "Employees" Under FICA. .................11

    3.   Residents Perform "Services" For Purposes of FICA. .............................16

II.  The Eleventh Circuit Rejected Defendant's "Statutory History" Argument. ...18

Plaintiff Emory University ("Emory") submits this memorandum in opposition to Defendant's Motion for Summary Judgment. The motion rests on two grounds: (1) that Emory cannot establish that residents perform services in the employ of Emory, a purported element of its case; and (2) that medical residents are *per se* ineligible for the "student exemption" from FICA taxation. Both arguments lack merit, and for the reasons set forth below, Defendant's motion should be denied.

## Introduction

Emory filed this suit to recover FICA taxes assessed on wages that Emory paid to medical residents enrolled in a graduate medical education program between 1995 and 2005. FICA taxes are paid in part by employees through payroll withholding and in part by employers through direct payment. The lawsuit seeks the return of both the employer's portion of FICA taxes, which Emory paid, and the employee's portion, which Emory withheld and paid on behalf of residents.

Emory's claim is based on the application of a statutory exemption for "service performed in the employ of . . . *a school, college, or university* . . . if such service is performed by *a student who is enrolled and regularly attending classes at such school, college, or university.*" 26 U.S.C. § 3121(b)(10) (emphasis added) (hereinafter "the student exemption"). Emory contends that resident services are

an integral part of their educational curriculum and fall plainly within the

exemption for "students" employed by a "school, college, or university."  Several

courts have applied the student exemption to medical residents, including recently

in *United States v. Mount Sinai Medical Center of Florida, Inc.*, No. 02-22715-

CIV, 2008 WL 2940669 (S.D. Fla. July 28, 2008).

<u>**Summary of Argument**</u>

Defendant's contention that Emory bears the burden of proving that

residents performed services in Emory's employ is fatally flawed.  If residents had

not been performing services as employees of Emory, Defendant would not have

taxed their wages *ab initio*.  The existence of an employer-employee relationship –

an antecedent condition for the *prima facie* application of employment tax – is not

contested in this case.  *See* 26 U.S.C. §§ 3101, *et seq*.  Defendant's failure to

refund the FICA taxes at issue and its opposition to Emory's lawsuit unequivocally

bespeaks Defendant's own position that residents performed services in the employ

of Emory.

Moreover, Defendant's argument that Emory is unable to "prove" that

residents are employees *because* Emory witnesses testified that residents are

students rests on the unsupportable premise that "student" and "employee" are

mutually exclusive classifications.  Defendant's novel interpretation would literally

prevent taxpayers from ever being able to satisfy the requirements of the student exemption, rendering it a nullity.  The structure and plain language of the student exemption require that the exemption be applied to employees who *also* are students.  Under the Eleventh Circuit's decision in *United States v. Mount Sinai Medical Center of Florida, Inc.*, Emory's burden is to show only that a resident (the taxed employee) is a "student" and that Emory (the taxed employer) is a "school, college, or university." [1]  *See* 486 F.3d 1248, 1252 (11th Cir. 2007).

As discussed further in Section I of the brief, even if Defendant were otherwise correct about Emory's burden in this case, the assertion that Emory denies and cannot prove that residents perform services in its employ is demonstrably wrong for three reasons.  First, Emory has admitted, pursuant to Fed. R. Civ. P. 36, that it employed the residents.  This admission, which has the effect of a trial stipulation, is fatal to Defendant's motion.

Second, Defendant's argument relies on opinion testimony that is irrelevant to the determination under FICA of an employer-employee relationship. Defendant contends, in essence, that if Emory witnesses do not characterize residents as "employees," then residents must not be "employees."  However, Defendant's FICA regulations preclude that argument:  "If the relationship of

---

[1]    Defendant has admitted that Emory is a "school, college or university." Answer ¶9.

employer and employee exists, the designation or description of the relationship by the parties as anything other than that of employer and employee is *immaterial*." 26 C.F.R. § 31.3121(d)-1(a)(3) (emphasis added). As detailed in Emory's separate Statement of Additional Material Facts in Opposition to Defendant's Motion ("AF"), there is abundant evidence in the record to support the conclusion that Emory employed the residents based on "the usual common law rules" that govern FICA taxation. 26 U.S.C. § 3121(d)(2).

Third, Emory does not dispute that residents perform "services," within the broad meaning of FICA, as an integral part of their course of study. As described in Emory's separate Response to Defendant's Statement of Material Facts, Emory's witnesses testified at length about the patient-related activities that residents must learn and demonstrate during their residency training.

Reviewing all of the evidence and inferences in a light most favorable to Emory, as is required at this stage of the proceeding, Defendant's first argument for summary judgment fails as a matter of law and fact.

Finally, Defendant admits (as it must) that the second ground for its motion – an argument for *per se* ineligibility of residents based on a so-called "statutory history" of the student exemption – is "foreclosed" by the Eleventh Circuit's decision in *Mount Sinai*. Def.'s Motion at 3. Defendant nonetheless

raises the issue purportedly "to preserve it for further appellate review." *Id.*  As

discussed in Section II of the brief, the Eleventh Circuit has rejected Defendant's

argument, thus requiring the same outcome here.

## Legal Background

Emory's lawsuit is one of several cases seeking a judicial

determination that stipend payments to medical residents are exempt from Federal

Insurance Contribution Act ("FICA") taxation because of the "student exemption"

codified in 26 U.S.C. § 3121(b)(10).  "FICA imposes taxes on wages that

employers pay their employees for the purpose of funding the Social Security Trust

Fund." *Mount Sinai*, 486 F.3d at 1250 (holding that medical residents may be

eligible for the student exemption).  The FICA statute broadly defines "wages" to

mean "all remuneration for employment," and it broadly defines "employment," in

turn, to mean "any service of whatever nature, performed . . . by an employee for

the person employing him . . . ."  26 U.S.C. § 3121(a), (b).  A person is deemed an

"employee" for purposes of FICA based on "the usual common law rules

applicable in determining the employer-employee relationship." *Id.*, § 3121(d)(2).

However, there are "numerous relationships that are exempted from

FICA taxation by statutory exceptions to the definition of 'employment.'" *Mount

Sinai*, 486 F.3d at 1250.  One of them, the student exemption, places beyond

FICA's reach "service[s] performed in the employ of . . . a school, college, or university. . . if such service is performed by a student who is enrolled and regularly attending classes at such school, college, or university."  26 U.S.C. § 3121(b)(10).  Treasury regulations implementing this exemption during the relevant tax period provided that an employee whose services are "incident to and for the purpose of pursing a course of study" has the status of a student.  26 C.F.R. § 31.3121(b)(10)-2(d) (pre - 4/01/05).  Significantly, "the amount of remuneration for services performed by the employee . . . , the type of services performed by the employee, and the place where the services are performed are not material" to whether the student exemption applied.  *Id.*, § 31.3121(b)(10)-2(b) (pre - 4/01/05).

In *Mount Sinai*, the Eleventh Circuit held that the meaning of the student exemption was "not ambiguous."  486 F.3d at 1251.  The Court held that "[w]hether a medical resident is a 'student' and whether he is employed by a 'school, college, or university' are separate factual inquiries that depend on the nature of the residency program in which medical residents participate and [on] the status of the employer."  *Id.* at 1252.

After a trial in *Mount Sinai*, the district court adjudged that the stipends paid to medical residents were exempt from FICA taxation because of the

student exemption. *See Mount Sinai,* 2008 WL 2940669.[2]  Other courts have

reached the same result. *See Center for Family Medicine v. United States*, Civ. No.

05-4049-KES, 2008 WL 3245460 (D.S.D. Aug. 6, 2008); *Regents of the University*

*of Minnesota v. United States*, Civ. No. 06-5084 (RHK/JSM), 2008 WL 906799

(D. Minn. April 1, 2008); *United States v. Mayo Foundation for Medical*

*Education and Research*, 282 F. Supp. 2d 997 (D. Minn. 2003); *see also*

*Minnesota v. Apfel*, 151 F.3d 742 (8th Cir. 1998).

### Standard of Review

          "Summary judgment is appropriate only when the pleadings,

depositions, and affidavits submitted by the parties show that no genuine issue of

material fact exists and that the movant is entitled to judgment as a matter of law."

*Russell v. Promove, LLC,* 2007 WL 2274770, at *2 (N.D. Ga. Aug. 7, 2007)

(Story, J.) (denying motion regarding the defendant's status as an "employer"

under the Fair Labor Standards Act).  "On summary judgment, 'the evidence of the

nonmovant is to be believed.'"  *Hickson Corp. v. Northern Crossarm Co., Inc.*, 357

F.3d 1256, 1260 (11th Cir. 2004) (quoting *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 255 (1986)).  "The court should view the evidence and any inferences

that may be drawn in the light most favorable to the non-movant." *Russell,* 2007

---

[2]      The district court's opinion includes a comprehensive discussion of graduate
medical education in the United States. *See id.*, 2008 WL 2940699 at **3-10.

WL 2274770, at *2 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970)).

Even where, as here, the Court is the ultimate finder of fact, "the requirement that

the Court resolve any genuine dispute of material fact in a light most favorable to

the non-moving party – continue[s] to pervade this Court's analysis" on a motion

for summary judgment.  *Id.*, at *4.

## ARGUMENT

**I.      Emory Does Not Contest Its *Prima Facie* Employment Tax Liability.**

As a threshold matter, Defendant's motion rests on the illogical

premise that Emory must "prove" the existence of an employer-employee

relationship – a necessary determination for the *Defendant's* contention that Emory

was liable for any employment tax.  That determination is "presumed correct."

*Mays v. United States*, 763 F.2d 1295, 1297 (11th Cir. 1985).  If residents had not

performed services in Emory's employ, then Defendant would have no basis to

contest Emory's claimed refund of employment taxes.   In fact, Defendant has

consistently maintained that the residents were employed by Emory.[3]  AF ¶¶1-4.

---

[3]      Emory does not concede that the variance doctrine would prevent Emory
from obtaining a refund if the Court were to grant the instant motion.  *See* Def.'s
Mem. at 17 n.6.  Because Defendant's motion seeks relief on a ground that
contradicts its legal position, Defendant has waived any argument that Emory is
precluded from claiming a refund on the basis that residents are not employees.
*See, e.g., Bowles v. United States*, 820 F.2d 647 (4th Cir. 1987).

Defendant's assertion that Emory – in order to show its entitlement to a tax refund based on the student exemption – must also prove the antecedent employer-employee relationship on which basis Defendant taxed it, is frivolous on its face. A "[statutory] exception exists only to exempt something which would otherwise be covered." *Florida Gulf Coast Building and Construction Trades Council v. N.L.R.B.*, 796 F.2d 1328, 1341 (11th Cir. 1986). None of the cases that Defendant cites (Memo. at 5) required the taxpayer to prove its *prima facie* tax liability in order to avail itself of an exemption, and the Eleventh Circuit read no such requirement into the student exemption in *Mount Sinai*.

Assuming *arguendo* that Emory has to demonstrate the uncontested employer-employee relationship, Emory has met that burden as described below.

1.    The Parties Have Stipulated That Emory Employed The Residents.

Emory has admitted, pursuant to Federal Rule of Civil Procedure 36, that it employed the residents in this case. Defendant asked Emory to admit that "[f]or the 1995-2005 tax years, Emory's residents were employees of Emory

---

In addition, the germaneness exception to the variance doctrine would permit Emory to seek a refund because the IRS had to determine previously whether residents were employees when it audited Emory's refund claims. *See Mutual Assurance, Inc. v. United States*, 56 F.3d 1353, 1356-57 (11th Cir. 1995) (otherwise prohibited amendment is acceptable where the basis for the amendment rests on facts that the IRS examined or should have examined in determining the merits of the original claim).

University."  Emory's response *"admits that residents are* students . . . *employed by Emory University*, and therefore are exempt from FICA taxes under 26 U.S.C. § 3121(b)(10)."  AF ¶5 (emphasis added).[4]  Matters admitted under Federal Rule 36 are "conclusively established" unless amended or withdrawn.  Fed. R. Civ. P. 36(b).  *Accord, e.g., Williams v. City of Dothan*, 818 F.2d 755, 762 (11th Cir. 1987) (same).

As the Rules Advisory Committee explained, "[i]n form and substance a Rule 36 admission is comparable to an admission in pleadings or a stipulation drafted by counsel for use at trial, rather than to an evidentiary admission of a party."  48 F.R.D. 487, 534 (1970).  *Accord, e.g., American Automobile Association v. AAA Legal Clinic*, 930 F.2d 1117, 1120 (5th Cir. 1991) (quoting Advisory Committee); *Airco Indus. Gases, Inc. v. The Teamsters Health and Pension Fund*, 850 F.2d 1028, 1037 (3d Cir. 1988) (an admission "is not merely another layer of evidence," but rather "an unassailable statement of fact that narrows the triable issues in the case.").

---

[4]    Emory's response was subject to an objection based on Defendant's failure to specify the intended meaning of "employee;" however, Emory specifically admitted the meaning of "employee" relevant for purposes of FICA.

Similarly, Emory stated in response to an interrogatory:  "*Emory does not dispute that residents were in the employ of Emory*, which is a 'school, college or university;' . . . ."  AF ¶6 (emphasis added.)

Defendant, which served the request, cannot avoid the binding consequence of Emory's admission.[5]  "Essentially, Rule 36 is a time-saver, designed to expedite the trial and to relieve the parties of the cost of proving facts that will not be disputed at trial."  *Perez v. Miami-Dade County*, 297 F.3d 1255, 1268 (11th Cir. 2002) (quoting 8A Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, *Federal Practice and Procedure* § 2252 (2d ed. 1994)).

Thus, Defendant's motion should be denied on this ground alone.

2.    <u>Residents Are Considered Emory "Employees" Under FICA.</u>

Consistent with Emory's admission, the record is replete with evidence showing that, for purposes of employment taxation, the requisite employer-employee relationship existed between Emory and its residents.  The FICA statute does not define the term "employer," but it defines "employee" to mean, in pertinent part, "an individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee."  26 U.S.C. § 3121(d)(2).  Under the implementing Treasury regulations, "[g]enerally such relationship exists when the person for whom the services are performed has the right to control and direct the individual who

---

[5]    Because Defendant requested an admission that "Emory residents were employees of Emory University" during the tax years in question, it is only as to those facts that a trial stipulation was formed by Emory's admission.  Emory is not suggesting that Defendant has stipulated that Emory's residents are students.

performs the services." 26 C.F.R. § 31.3121(d)-1(c) (describing common law

factors). *See also Wolf v. Coca-Cola Co.*, 200 F.3d 1337, 1340 n.1 (11th Cir.

2000) (same).

Defendant's attempt to construe testimony about the character of the

residents' relationship with Emory as evidence of no employment relationship is

misconceived. Subjective belief that a resident is not an "employee" is irrelevant

to the determination of a common law employment relationship under FICA.

Indeed, Defendant's own regulation forecloses its argument: *"If the relationship*

*of employer and employee exists, the designation or description of the relationship*

*by the parties as anything other than that of employer and employee is*

*immaterial*." 26 C.F.R. § 31.3121(d)-1(a)(3) (emphasis added). This FICA

regulation ensures that "the evidence, and not characterization of the relationship

by the parties, determines employment tax liability." *Barium & Chemicals, Inc., v.*

*Commissioner of Internal Revenue*, No. 5668-02, 2004 WL 435057, at *6 (U.S.

Tax Ct. Mar. 10, 2004). *See also, e.g., Kumpel v. Commissioner of Internal*

*Revenue*, No. 14339-01, 2003 WL 22093487 (U.S. Tax. Ct. Sept. 10, 2003)

("Where, as here, common law factors compel a finding that an employer-

employee relationship exists, the parties' intentions to the contrary will not be

given effect.").

The importance of this rule to the FICA regime is obvious; were subjective opinion alone sufficient to negate the existence of an employment relationship, the adverse consequences for employment tax revenues would be crippling. Thus, witness testimony is relevant to establish the factual circumstances of the residents' relationship as "students" of Emory under the student exemption, but testimony is irrelevant as a matter of law to the antecedent characterization of that relationship as employer-employee under the common law.

In this case, there is ample evidence demonstrating that FICA's common law employment test has been satisfied. To start, Defendant treated Emory as the "employer" of residents and treated residents as "employees" of Emory. AF ¶¶1-2. *See Wolf,* 200 F.3d at 1340 n.1 (tax treatment is a common law factor). In addition, at all relevant times:

- Emory, through the Office of Graduate Medical Education of its medical school, operated the medical residency programs. Emory was accredited as the "institutional sponsor" of those programs by the Accreditation Council for Graduate Medical Education ("ACGME"), a non-profit organization that prescribes educational standards for medical residency programs.[6] AF ¶¶7-9.

---

[6]     The ACGME "has become a major driving force in the standardization of robust educational curricula" in medical residency programs. *Mount Sinai*, 2008 WL 2940669, at *7; *see id.* at ** 7-10 (describing the AGCME accreditation requirements and oversight process).

- Emory faculty designed, implemented, and taught the residency programs. AF ¶¶12-13, 23-24.

- Emory directed and controlled the residents through assigned "duties, responsibilities and rotations," pursuant to a formal educational curriculum. Emory faculty selected and scheduled the rotations for each program according to educational requirements. AF ¶¶13-15, 17.

- Emory selected the residents. AF ¶10.

- Emory contracted with the residents through an "appointment agreement" that, together with Emory's House Staff Manual, set forth "[t]he specific terms and conditions of" residency training and "also govern[ed] [the residents'] relationship with each of the Affiliated Hospitals to which [they were] assigned" for purposes of their clinical education. AF ¶11.

- Emory determined the amount of resident compensation.[7] The residency agreement set forth the "annual compensation rate." Emory paid residents by check on the last day of each month. AF ¶¶18-20.

- Consistent with ACGME requirements, Emory provided residents with various benefits, such as insurance for health care, life, and disability. Residents were eligible to participate in Emory's employee retirement plan, and they received various other benefits from Emory. All benefits were administered through Emory's Office of Graduate Medical Education. AF ¶¶21-22.

- Emory faculty had the right and responsibility to supervise residents during rotations and to evaluate residents on their achievement of learning goals and objectives. When residents performed medical procedures with a service component, they did so pursuant to a formal

---

[7]    The ACGME "requires sponsoring institutions to provide all residents with appropriate financial support and benefits." *Mount Sinai,* 2008 WL 2940669, at *8.

course of study and under the supervision of Emory faculty.  AF ¶¶23-24.

- Emory had the exclusive authority to determine whether to continue or terminate the residents' enrollment.  AF ¶¶25, 27.

- Emory had the exclusive authority to discipline residents.  AF ¶26.

- In its affiliation agreements with participating hospitals and clinics, Emory expressly retained the authority to "select," "appoint," "compensate," and "supervise and direct the Resident's activities at the Hospital," pursuant to the "educational goals and objectives" that Emory established.  Those agreements acknowledged that "[r]esidents are and will remain under the administrative control of the University and under the supervision of the clinical faculty of the University."  AF ¶16.

Other courts examining such evidence have consistently held that the analogous "school, college, or university" that operated the residency program was also the common law employer of the residents.  *See, e.g.*, *Center for Family Medicine*, 2008 WL 3245460, at **6-7; *Regents of the University of Minnesota*, 2008 WL 906799, at ** 3-5; *Mayo Foundation*, 282 F. Supp. 2d at 1011-13.[8]  The result should be the same here.

_____

[8]    All of those cases involved resident stipends.  Defendant's argument (Memo. at 14-15) that stipends are not "wages," because they are provided as educational support rather than as compensation for services, is irrelevant.  *See* *CSX Corp. v. United States*, 518 F.3d 1328, 1333 (Fed. Cir. 2008) ("The term 'wages' encompasses more than the amount paid for particular services rendered; as long as the payment in question is remuneration for the overall employment relationship, it is properly encompassed within the term 'wages' under section

3.    <u>Residents Perform "Services" Within the Meaning of FICA.</u>

Similarly, neither side disputes that a resident's patient care activities are considered "services" for purposes of FICA. As Defendant states elsewhere in its brief, "[t]he very words, 'any service. . . performed. . . for his employer,' with the purpose of the Social Security Act in mind, import a breadth of coverage." *Social Security Bd. v. Nierotko*, 327 U.S. 358, 365 (1946) (quoted in Def.'s Memo. at 23). Not a single Emory witness denied that residents performed "services," and Defendant's counsel never asked about "services" within the broad meaning of FICA. Rather, the relevant issue under the student exemption is whether resident services are "incident to and for the purpose of pursuing a course of study;" if so, the student exemption applies. *Mount Sinai*, 486 F.3d at 1250; *see also Mount Sinai*, 2008 WL 2940669, at *34 n.42 (stating that "the proper inquiry under the applicable regulations is whether the services performed were required by the residency program curricula – i.e., the course of study – which, the evidence establishes here, was the case."). Emory's witnesses testified extensively about the

---

3121(a) of FICA."). As the court held in *University of Minnesota*: "The question of whether the residents' services are performed in the 'employ' of the University 'depends not on the nature of stipends but on the nature of the residents' relationship with the University.'" 2008 WL 906799, at *4. Defendant's discussion concerning residents' effect on faculty efficiency or their benefit to hospitals is irrelevant for similar reasons. *See id.*

patient procedures that residents must learn, demonstrate and practice as a part of their formal curriculum at Emory. *See* Plaintiff's Response to Defendant's Statement of Material Facts ¶2.[9]

\* \* \* \*

In short, considering all of the evidence and inferences in a light most favorable to Emory, as is required on Defendant's motion for summary judgment, there is ample basis for this Court to conclude that residents (as students) performed services (as part of their studies) in the employ of Emory. At a minimum, Defendant has not established that Emory is unable to present evidence sufficient to discharge any burden placed upon it. Accordingly, Defendant's motion should be denied.

---

[9]    Consistent with hospital bylaws and Medicare requirements, ultimate responsibility and accountability for patient care at all times resides with the supervising faculty member, not the resident. *See, e.g., Mount Sinai,* 2008 WL 2940669, at \*18. Defendant's brief distorts faculty and resident testimony on this subject to imply erroneously that witnesses denied residents performed "services" – a question that Defendant's counsel never asked them.

**II.    The Eleventh Circuit Rejected Defendant's "Statutory History" Argument.**

The Eleventh Circuit's decision in *Mount Sinai* has "foreclosed for this Court" the Defendant's second argument that "medical residents are not eligible for the student exemption because the statutory history of the student exception demonstrates that Congress intended to exclude medical residents from its coverage." Def.'s Motion at 3. Defendant purportedly "raises the issue in order to preserve it for further appellate review" (*id.*), even though the doctrine of *stare decisis* precludes such review. Defendant devotes over seven pages of its brief to this discredited argument, which, Defendant avers, "does not rely upon legislative history, but instead upon the history of legislation." Def.'s Memo. at 18.[10]

A new label on an old argument, however, cannot circumvent the Eleventh Circuit's holding in *Mount Sinai* that "the statutory language of 26 U.S.C. § 3121(b)(10) is not ambiguous." 486 F.3d at 1251. This holding precludes debate over statutory intent. *Id.* (citing cases). In short, Defendant's rehash of the so-called statutory history fails as a matter of law. *See Webster v. Fulton County*, 51

---

[10]    Defendant's contention that the Eleventh Circuit "overlooked" the merits of its argument is disingenuous. In fact, the Eleventh Circuit explained in detail why "[t]he government's arguments with respect to the FICA scheme and the history of the separate intern exemption are unavailing." *Mount Sinai*, 486 F.3d at 1253. *See also University of Chicago Hospitals v. United States*, No. 07-1838, 2008 WL 4301442, at *4-5 (7th Cir. Sept. 23, 2008) (rejecting same arguments).

F. Supp. 2d 1354, 1367 (N.D. Ga. 1999) ("The Court's duty is to follow the Constitution and the law as interpreted by the Supreme Court and the Eleventh Circuit.").

## Conclusion

For the foregoing reasons, Defendant's motion for summary judgment should be denied.

Respectfully submitted,

   */s/  Brent F. Powell*
Eric C. Bosset
Brent F. Powell
Kimberly A. Gould
(admitted *pro hac vice*)
COVINGTON & BURLING LLP
1201 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2401
Telephone: (202) 662-6000
Facsimile: (202) 662-6291

Henry R. Chalmers (Ga. Bar No. 118715)
ARNALL GOLDEN GREGORY LLP
171 17th Street, N.W., Suite 2100
Atlanta, GA 30363
Telephone: (404) 873-8500
Facsimile: (404) 873-8501

October 7, 2008                    *Counsel for Plaintiff Emory University*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | | |
|---|---|---|
| **EMORY UNIVERSITY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 1:07-CV-1528-RWS** |
| **THE UNITED STATES OF** | ) | |
| **AMERICA,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on October 7, 2008, the undersigned caused a copy of the Plaintiff Emory University's Memorandum Of Law in Opposition to Motion for Summary Judgment to be served on counsel of record by electronic notice through the Court's CM/ECF system.

*/s/ Brent F. Powell*
Brent F. Powell
(admitted *pro hac vice*)