IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| EMORY UNIVERSITY, ) | |
| ) | |
|    Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 1:07-CV-1528-RWS |
| THE UNITED STATES OF ) | |
| AMERICA, ) | |
| ) | |
|    Defendant. ) | |
| ) | |

**STATEMENT OF ADDITIONAL MATERIAL FACTS IN OPPOSITION
TO UNITED STATES' MOTION FOR SUMMARY JUDGMENT**

       Pursuant to L.R. 56.1(B)(2)(b), plaintiff Emory University ("Emory") submits this Statement of Additional Material Facts in Opposition to United States' Motion for Summary Judgment. Emory contends that these additional facts are material and present a genuine issue for trial.

       1.    Defendant has admitted that "Emory paid the employer's share of social security tax" with respect to the wages reported for Emory's residents during the relevant time period. United States' Supp. Resp. to Pl.'s First Set of

Reqs. for Admis., Exhibit J, at 2 (Resp. to Req. No. 6) (Dkt. # 105, Ex. A).[1]

Defendant has also admitted that "Emory paid the employer's share of Medicare tax" with respect to the wages reported for Emory's residents during the relevant time period. *Id.* at 3 (Resp. to Req. No. 10).

       2.      Defendant has admitted that Emory withheld and paid on behalf of its residents the employee portion of social security tax levied during the relevant time period. United States ' Supp. Resp. to Pl.'s First Set of Reqs. for Admis., Exhibit J, at 2 (Resp. to Req. No. 5) (Dkt. # 105, Ex. A). Defendant has also admitted that Emory withheld and paid on behalf of its residents the employee portion of Medicare tax levied during the relevant time period. *Id.* at 3 (Resp. to Req. No. 9).

       3.      Defendant has represented to the Court multiple times that the issue in this case is "whether medical residents *employed at Emory University* are exempt from FICA taxation as students enrolled and regularly attending classes at a university." United States of America's Opp. to Pl.'s Mot. to Deem Admitted Pl.'s First Set of Reqs. for Adm., at 1–2 (Dkt. # 84) (emphasis added); *see also* Def.'s Mem. of Law in Support of Mot. to Compel, at 2 (Dkt. # 126); United States

---

[1] All exhibits cited herein are exhibits to Emory's Memorandum of Law in Opposition to Motion for Summary Judgment.

of America's Resp. to Emory Univ.'s Mot. to Strike the Expert Rep. of Thomas C. Gentile, at 9 (Dkt. # 108).

    4.    Defendant's expert, Thomas C. Gentile, testified that Emory's residents are employed by Emory University.  Specifically, Mr. Gentile testified:

> Q: Is it your opinion in this case that Emory's residents are employees of a teaching hospital?
>
> A: I would answer that, no, I do not believe they're employees of the hospital because I know the fact that they're employed by the university.
>
> . . . .
>
> Q: I believe you testified a minute ago that Emory's residents are employees of the university, correct?
>
> A: That's correct.

Gentile Dep., Exhibit U, at 80:9–13, 84:3–6.

    5.    Emory has admitted that its "*residents* are students enrolled and regularly attending classes at and *also employed by Emory University*." Pl.'s Objs. and Resps. to Def. United States of America's First Set of Reqs. for Admis., Exhibit K, at 17–18 (Resp. to Req. No. 39) (emphasis added).

    6.    Emory has stated in response to an interrogatory that "*Emory does not dispute that residents were in the employ of Emory, which is a 'school, college, or university;'* the relevant question is whether the services they

3

performed while in the employ of Emory were 'incident to and for the purpose of pursuing a course of study' at Emory during the tax years at issue. 26 C.F.R. § 31.3121(b)(10)-2(c)." Pl.'s Resp. to the United States of America's Second Set of Interrogs. to Pl., Exhibit L, at 10 (Resp. to Interrog. No. 8) (emphasis added).

7. At all relevant times, Emory has administered the residency programs through the Office of Graduate Medical Education ("GME Office") in the School of Medicine. *See* House Staff Manual, Exhibit B, p. 3.[2]

8. At all relevant times, Emory had ultimate responsibility for the oversight of all aspects of the residency programs. *See* House Staff Manual, Exhibit B, p. 4, § 2.01; *see also, e.g.*, Zaidan Dep., Exhibit FF, at 8:13 – 9:7; Raynor Dep., Exhibit Z, at 29:13 – 31:6.

9. At all relevant times, the Accreditation Council for Graduate Medical Education ("ACGME") accredited Emory as the institutional sponsor for the residency programs. *See* Institutional Review Document, Exhibit G, p. 3-1, ¶ 1. As the sponsoring institution, Emory was responsible for "the quality of [the

---

[2] All documentary evidence cited in support of Emory's Statement of Additional Material Facts has been authenticated in the Declaration of Marilane Bond. *See* Exhibit A to Emory's Opp. Br.

4

residents'] educational experience and [] retain[ed] authority over the residents' activities." ACGME Institutional Requirements, Exhibit H, p. 4, ¶ I.C.

10. At all relevant times, Emory was solely responsible for selecting residents and appointing them to the residency programs. *See* Hospital Affiliation Agreement, Exhibit C, p. 1, ¶ III.A; House Staff Manual, Exhibit B, p. 11, § 5.01. Emory faculty reviewed applicant files and interviewed and ranked candidates. *See, e.g.*, Swerlik Dep., Exhibit DD, at 13:19 – 14:21; Dodson Dep., Exhibit S, at 67:9 – 70:16; Aaron Dep., Exhibit M, at 7:7–17; Raynor Dep., Exhibit Z, at 64:10 – 74:13; Buchter Dep., Exhibit P, at 13:8 – 15:8.

11. At all relevant times, after gaining admission into the residency programs, residents signed ACGME-mandated appointment agreements with Emory that set forth the residents' responsibilities and expectations. *See* Residency Appointment Agreement, Exhibit D; ACGME Institutional Requirements, Exhibit H, p. 7, ¶ II.C.3. Together with the House Staff Manual, the appointment agreement set forth "[t]he specific terms and conditions of" residency training and "also govern[ed] [the residents'] relationship with each of the Affiliated Hospitals to which [they were] assigned" for their clinical education. Residency Appointment Agreement, Exhibit D.

12. At all relevant times, Emory faculty members were assigned as Program Directors with responsibility for overseeing and organizing the activities of the residency programs. *See* ACGME Common Program Requirements, Exhibit I, p. 2, ¶ III.B.1; *see also, e.g.*, Zaidan Dep., Exhibit FF, at 24:7–23; Buchter Dep., Exhibit P, at 5:14 – 6:3; Raynor Dep., Exhibit Z, at 10:12 – 11:20, 31:14–25.

13. At all relevant times, Emory faculty developed and taught the educational curricula of the residency programs. Hospital Affiliation Agreement, Exhibit C, p. 1, ¶ III.A; ACGME Common Program Requirements, Exhibit I, p. 3, ¶ IV.A; *see also, e.g.*, Buchter Dep., Exhibit P, at 5:14 – 6:3; Raynor Dep., Exhibit Z, at 17:17 – 19:7; Baumgartner Dep., Exhibit N, at 81:19 – 82:19; Oyesiku Dep., Exhibit Y, at 22:8 – 23:11, 45:23 – 47:2, 61:17 – 62:23.

14. At all relevant times, Emory controlled the residents' activities by assigning "duties, responsibilities, and rotations" pursuant to an educational curriculum that Emory designed and implemented. House Staff Manual, Exhibit B, pp. 3–4, §§ 1.01, 2.05; *see also, e.g.*, Shayne Dep., Exhibit CC, at 18:18 – 21:9, 35:24 – 36:12, 41:2–20, 55:18 – 56:13; Zaidan Dep., Exhibit FF, at 117:15 – 118:21; Oyesiku Dep., Exhibit Y, at 100:8 – 102:15; Aaron Dep., Exhibit M, at 45:23 – 47:6.

15. At all relevant times, Emory selected the residents' training sites and entered into contracts with area hospitals and clinics where the residents trained. *See* Hospital Affiliation Agreement, Exhibit C; 2003 Letter to ACGME, Exhibit E; 1997 Letter to ACGME, Exhibit F; *see also, e.g.*, Shayne Dep., Exhibit CC, at 27:3 – 28:6; Schayes Dep., Exhibit AA, at 79:15 – 80:13; Baumgartner Dep., Exhibit N, at 55:8 – 57:11; Doyle Dep., Exhibit T, at 154:4 – 156:9; Crowder Dep., Exhibit Q, at 73:16 – 75:22; Aaron Dep., Exhibit M, at 76:1 – 77:7.

16. At all relevant times, under the affiliation agreements between Emory and participating hospitals and clinics, Emory expressly retained the right and responsibility to "select[] Residents and appoint[] them to the Training Program," "compensat[e] Residents on a monthly basis and provid[e] them with employment benefits in accordance with the University's policies and procedures," "establish the educational goals and objectives" of the residency programs, and "assign faculty members . . . to supervise and direct the Residents' activities at the [participating hospital]." Hospital Affiliation Agreement, Exhibit C, p. 1, ¶¶ III.A–C. The affiliation agreements acknowledged that "[r]esidents are and will remain under the administrative control of the University and under the supervision of the clinical faculty of the University." *Id.* at p. 1, ¶ III.C.

17.     At all relevant times, Emory determined the purpose and sequence of rotations at hospitals and clinics that the residents were required to complete as part of their residency curriculum, and it scheduled the residents on each rotation.  *See, e.g.*, Bond Dep., Exhibit O, at 8:9–20, Buchter Dep., Exhibit P, at 17:24 – 18:15, Oskouei Dep., Exhibit Y, at 46:10–14; Zaidan Dep., Exhibit FF, at 117:15 –118:21; Shayne Dep., Exhibit CC, at 25:25 – 30:1.

18.     At all relevant times, Emory was "responsible for compensating Residents on a monthly basis and for providing them with employment benefits in accordance with the University's policies and procedures . . . ."  Hospital Affiliation Agreement, Exhibit C, p. 1, ¶ III.B.  The residency appointment agreement set forth the residents' "annual compensation rate."  Residency Appointment Agreement, Exhibit D.

19.     At all relevant times, Emory determined the residents' compensation, or stipend.  *See* House Staff Manual, Exhibit B, p. 11, § 5.02; Institutional Review Document, Exhibit G, p. 4-8, ¶ f.  "Stipend amounts are based on post-graduate year level, are identical for all programs, and increase for each additional year completed by the resident."  House Staff Manual, Exhibit B, p. 11, § 5.02.

20.     At all relevant times, Emory paid the residents' compensation, or stipend.  Hospital Affiliation Agreement, Exhibit C, p. 1, ¶ III.B; *see also* Bond Dep., Exhibit O, at 30:25 – 31:5; Zaidan Dep., Exhibit FF, at 153:1–5; Raynor Dep., Exhibit Z, at 205:14–17.  Emory paid residents via direct deposit on the last day of each month.  *See* House Staff Manual, Exhibit B, p. 11, §§ 5.02, 5.03.

21.     At all relevant times, Emory provided the residents with various employee benefits, including health care, life insurance, disability insurance, retirement plan participation, paid leave, and workers' compensation.  *See* House Staff Manual, Exhibit B, pp. 4–10, §§ 3–4, p. 11, § 5.02, p. 27, § 13.01; *see also* Hospital Affiliation Agreement, Exhibit C, p. 1, ¶ III.B.

22.     At all relevant times, the GME Office administered the residents' payroll and benefit programs.  *See* House Staff Manual, Exhibit B, p. 4, § 2.03; Hospital Affiliation Agreement, Exhibit C, p. 2, ¶ III.E; Zaidan Dep., Exhibit FF, at 55:24 – 56:2; Raynor Dep., Exhibit Z, at 205:14–17.

23.     At all relevant times, Emory faculty had the right and responsibility to supervise the residents during their rotations at hospitals and clinics.  *See* House Staff Manual, Exhibit B, p. 3, § 1.03; Hospital Affiliation Agreement, Exhibit C, p. 1, ¶ III.C; ACGME Common Program Requirements, Exhibit I, p. 5, ¶ IV.D.3.  At all relevant times, residents were supervised by Emory

faculty. *See, e.g.*, Oyesiku Dep., Exhibit Y, at 47:5–25, 78:3 – 79:1; Shayne Dep., Exhibit CC, at 70:2 – 71:2; Oskouei Dep., Exhibit X, at 16:1–13, 63:10–20; DelGaudio Dep., Exhibit R, at 35:20 – 36:20; Schayes Dep., Exhibit AA, at 15:7–17; Zaidan Dep., Exhibit FF, at 95:8–16 ; Raynor Dep., Exhibit Z, at 17:17 – 18:3; Mackelfresh Dep., Exhibit V, at 18:1–11.

24. At all relevant times, Emory faculty evaluated the residents on their achievement of curricular goals and objectives. ACGME Common Program Requirements, Exhibit I, p. 3, ¶ III.D.2; *see also, e.g.*, Oyesiku Dep., Exhibit Y, at 81:25 – 84:14; Zaidan Dep., Exhibit FF, at 95:17 – 101:24; Shayne Dep., Exhibit CC, at 30:14 – 32:22; Buchter Dep., Exhibit P, at 51:2–21, 52:21 – 53:13, 56:8 – 58:5; Zafari Dep., Exhibit EE, at 88:8 – 89:25; Murali Dep., Exhibit W, at 66:20 – 68:9.

25. At all relevant times, Emory determined the residents' advancement in the program and decided whether to renew a resident's appointment agreement for the following academic year. *See* House Staff Manual, Exhibit B, p. 11, § 5.01; Residency Appointment Agreement, Exhibit D; *see also, e.g.*, Raynor Dep., Exhibit Z, at 184:14 – 185:22; Dodson Dep., Exhibit S, at 12:12–22, 13:23 – 15:6; Shayne Dep., Exhibit CC, at 30:14 – 31:3.

26. At all relevant times, Emory was responsible for disciplining residents who failed to fulfill their responsibilities. *See* House Staff Manual, Exhibit B, pp. 18–20, Section 7; *see also, e.g.*, Raynor Dep., Exhibit Z, at 181:18 – 183:5; Oskouei Dep., Exhibit X, at 69:8–23; Doyle Dep., Exhibit T, at 50:7 – 51:9.

27. At all relevant times, Emory had the right to terminate a resident's appointment agreement when the resident failed to fulfill his or her responsibilities or had not performed satisfactorily in the program. *See* Resident Appointment Agreement, Exhibit D; House Staff Manual, Exhibit B, p. 20, § 7.06, and at pp. 37–41, Section 34 (termination procedures).

Respectfully submitted,

*/s/ Brent F. Powell*
Eric C. Bosset
Brent F. Powell
Kimberly A. Gould
(admitted *pro hac vice*)
COVINGTON & BURLING LLP
1201 Pennsylvania Ave., N.W.
Washington, D.C. 20004-2401
Telephone: (202) 662-6000
Facsimile: (202) 662-6291

Henry R. Chalmers (Ga. Bar No. 118715)
ARNALL GOLDEN GREGORY LLP
171 17th Street, N.W.
Suite 2100
Atlanta, GA 30363
Telephone: (404) 873-8500
Facsimile: (404) 873-8501

October 7, 2008

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| EMORY UNIVERSITY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 1:07-CV-1528-RWS |
| THE UNITED STATES OF ) | |
| AMERICA, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## CERTIFICATE OF SERVICE

This is to certify that on October 7, 2008, the undersigned caused a copy of the foregoing Statement of Additional Material Facts in Opposition to United States' Motion for Summary Judgment to be served on counsel of record by electronic notice through the Court's CM/ECF system.

/s/ Brent F. Powell
Brent F. Powell
(admitted *pro hac vice*)