# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION

| | |
|---|---|
| EMORY UNIVERSITY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil No. 1:07-CV-1528-RWS |
| | ) |
| THE UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |

**REPLY TO PLAINTIFF EMORY UNIVERSITY'S OPPOSITION TO THE UNITED STATES' MOTION FOR SUMMARY JUDGMENT**

Emory does not contest the evidence upon which the United States relies in its motion for summary judgment: testimony from Emory's own witnesses that its medical residents do not work, i.e., perform service, as employees of the University. Nor has Emory produced any record evidence that its medical residents do perform services for Emory. As discussed in the United States' motion, without such service as employees, the student exception does not apply.

Instead of addressing these facts, Emory attempts to reframe the issue as whether its residents meet the foundational preconditions of FICA taxation. But Emory did not bring a claim challenging its general liability for FICA taxes.

Rather, Emory based its claim for refund specifically on the student exception. Because, based on Emory's witnesses' testimony, Emory cannot meet its burden of proving its residents' eligibility for the student exception – that its medical residents are employees and that they perform services within the meaning of the exemption – the Court should grant summary judgment to the United States.

## I. Emory's *Prima Facie* FICA Tax Liability Is Irrelevant – Emory Has Failed to Meet Its Burden Under the Student Exception.

Emory devotes most of its response to establishing that it is liable for FICA taxes as a threshold matter. The Government does not contest this, nor does it argue that Emory must prove its *prima facie* FICA tax liability to qualify for the student exception.

But Emory cannot prevail in this action if it does not meet the *student exception's prima facie* elements. As demonstrated in the United States' summary judgment brief, that individuals perform *service* for their *employer* are prerequisites for the student exception. 26 U.S.C. § 3121(b)(1); *see also* 26 C.F.R. §31.3121(b)(1) (as amended in 1975). It is for this reason that Emory's witnesses' repeated insistence that its medical residents are not employees of, and do not perform services for, the University is problematic. Had Emory's witnesses been

willing to acknowledge that residents are at least partially responsible for working as employees, this would not have been an issue. Yet *none of them* did so. Emory cannot have its witnesses deny all facts tending to show service and employment and still avail itself of the student exception. Emory now argues that the Court should ignore its witnesses' testimony and instead simply assume that its residents perform service as employees.[1] But because Emory's own witnesses have denied the student exception's basic prerequisites of service in an employer/employee relationship, it is proper for the Court to hold that Emory cannot meet its burden of proof in this refund suit.

---

[1] Citing *Mays v. United States*, 763 F.2d 1295, 1297 (11th Cir. 1985), Emory contends that the IRS's purported determination that an employer-employee relationship exists should be "presumed correct." [D.E. 138 at 8]. In fact, the IRS did not make any determinations with respect to Emory's claim for refund. Emory filed suit before the IRS issued a final decision. [See Complaint at ¶ 48, D.E. 1, and Answer at ¶ 48, D.E. 7].

Moreover, *Mays* does not stand for the proposition, as Emory implies, that every determination the IRS makes at the administrative level is "presumed correct" and binding upon the United States. Emory's two-word quotation of this case is misleading. The passage Emory quoted, in its entirety, does not limit the United States' arguments in a refund suit, but discusses the *plaintiff's* burden of proof: "In a tax refund suit, the Commissioner's deficiency determinations are presumed correct, and the burden of proof is on the taxpayer to show that the Commissioner's findings were erroneous. . . A taxpayer seeking a refund must show not only that the Commissioner erred, but must establish the correct amount of the refund due." *Mays,* 763 F.2d at 1297 (internal citations omitted).

If Emory's residents are as its witnesses insist – purely students who do not provide service in exchange from compensation – then perhaps it is true that they do not meet the foundational requirements of FICA taxation. However, Emory did not give the IRS the opportunity, as it must, to investigate at the administrative level such a claim. Having foreclosed the IRS from investigating this claim, the variance doctrine prevents Emory from raising this argument for the first time in this Court.

The variance doctrine limits a court's jurisdiction in a tax refund suit to only the arguments raised by the plaintiff in its administrative refund claim. *See Real Estate-Land Title and Trust Co. v. United States*, 309 U.S. 13, 17-18 (1940); *Charter Co. v. United States*, 971 F.2d 1576, 1579 (11th Cir 1992); *see also* Treas. Reg. § 301.6402-2(b)(1) ("[t]he claim must set forth in detail *each ground* upon which a credit or refund is claimed." (emphasis added)). The Eleventh Circuit and its predecessor "have steadfastly enforced" this rule, and have required that "at a minimum the taxpayer must identify in its refund claim the 'essential requirements' of each and every refund demand." *Charter Co.*, 971 F.2d at 1579-80. Neither Emory's administrative claim nor its complaint in this action alleged that its medical residents do not meet the foundational requirements for FICA taxation at

all. Emory, therefore, is barred from arguing this now.

Citing *Bowles v. United States*, 820 F.2d 647 (4th Cir. 1987), Emory maintains that because the United States' summary judgment motion "seeks relief on a ground that contradicts its legal position," the United States has waived the ability to invoke the variance doctrine. [D.E. 138 at 8 n.3]. This is incorrect. First, the United States' summary judgment motion does not contradict its legal position. As a plaintiff seeking a tax refund, Emory has the burden of proving all elements of its claim. *American Ass'n of Christian Schools v. United States*, 850 F.2d 1510, 1513 (11th Cir. 1988). It is not contradictory for the United States to hold Emory to this burden.

Moreover, the *Bowles* case is inapplicable here.. In *Bowles*, the United States successfully proved a defense which it introduced for the first time only weeks before trial that fundamentally changed the facts underlying the case. 820 F.2d 647. The taxpayers' refund claim was founded on the fact that their home for tax purposes was in New York. *Id.* at 648. The IRS denied their refund claim, while effectively agreeing with that premise. *Id.* Then, three weeks before trial, the United States argued that the taxpayers' actual tax home was in Virginia. *Id.* at 648. Accordingly, the taxpayers were allowed to override the variance doctrine to

argue based on the premise that their home was in Virginia. The appellate court found that "under these circumstances, the IRS waived its right to object to the [taxpayers] responding to its new defense." *Id.* at 649-650.

In contrast, here the IRS never relied on Emory's administrative refund claim.[2] Thus, the United States' contentions on summary judgment in this case do not shift the premise of Emory's refund claim, and any new arguments Emory would make now are not premised on the United States' contentions. No new facts are asserted, nor is the posture of the case altered. Rather, the facts and the law for an argument based on *prima facie* FICA tax liability were available to Emory from the start. Emory did not base its claim for refund on such an argument. It should not be allowed to so drastically change course and do so now. Emory also cites *Mutual Assurance, Inc. v. United States*, 56 F.3d 1353 (11th Cir. 1995) for the proposition that it may still amend its claim because "the basis for the amendment rests on facts the IRS examined or should have examined in determining the merits of the original claim." [D.E. 138 at 9 n.3]. *Mutual Assurance* does not stand for

---

[2] Emory filed suit before the IRS issued a final decision on Emory's administrative refund claim. [See Complaint at ¶ 48, D.E. 1, and Answer at ¶ 48, D.E. 7].

such a broad rule. In that case, the court based its holding on the fact that the taxpayer's amended claim had not set forth a new theory of recovery, but rather had asked the IRS to take action on previous discoveries. 56 F.3d at 1356. In so holding, the court specifically stated: "the amendment asserted the same ground for relief as the original claim . . . Therefore, the claim as amended does not differ in matter of substance from the claim as first presented." *Id.* at 1356-57 (internal quotations omitted).

In contrast, were Emory to now argue that its medical residents have no *prima facie* FICA tax liability, as opposed to merely falling within a specific exception to FICA taxation, it would offer a basis for relief that differed completely from its original claim. If Emory does indeed believe that its medical residents have no *prima facie* FICA tax liability, the Court should grant summary judgment to the United States, and Emory should file a new administrative claim with the IRS asserting that ground.

## II. Emory Has Not Established That Its Medical Residents Are Employees Under the Student Exception.

### A. Emory's response to the United States' request for admission does not establish that residents are employees under the student exception and, regardless, is inadmissible.

Emory invokes its own response to one of the United States' requests for admission in an attempt to meet its burden of proving the student exception's prerequisites. [D.E. 138 at 9]. Emory's non-response does no such thing. And even if Emory had made a good-faith admission, it could not cite its own admission as record evidence.

The United States asked Emory to admit simply: "For the 1995-2005 tax years, Emory's residents were employees of Emory University." [D.E. 138, Exhibit K at 17]. Emory would not do so. First, Emory objected to the United States' use of the term "employees" as "vague, ambiguous, and undefined." *Id.* Next, Emory refused to respond to the request for admission in a manner provided for under Federal Rule of Civil Procedure 36. That rule states that if a party does not admit a matter, it must specifically deny it or state why the party cannot truthfully admit or deny it. Instead, Emory's stated that it "admits that residents are students enrolled and regularly attending classes at and also employed by

Emory University, and therefore are exempt for FICA taxes under 26 U.S.C. § 3121(b)(10).

In other words, the only thing Emory "admitted" was that its residents qualify for the student exception, i.e., that it should win this case. Such a non-responsive, self-serving answer cannot relieve Emory of its burden to prove a foundational element to its refund claim and cannot overcome pages of deposition testimony to the contrary.

Moreover, a party cannot admit into evidence its own response to a request for admission. *See In re Air Crash at Charlotte*, 982 F. Supp. 1060, 1068 (D.S.C. 1996) ("A party may not utilize its own admissions at the trial.") (quoting Wright & Miller, Federal Practice and Procedure: Civil § 2264 at 571-72 (1994)); *Burns v. CSX Transp., Inc.*, 1991 U.S. App. LEXIS 1344, Case No. 90-1016, at *6 (4th Cir. Jan. 31, 1991) ("[a] party may not offer his own responses [to requests for admissions] as proof of the facts admitted."); *Underberg v. United States*, 362 F. Supp. 2d 1278, 1283 (D.N.M. 2005) ("a party generally may not introduce statements from its own answers to interrogatories or requests for admission as evidence because such answers typically constitute hearsay when used in this manner").

Additionally, Emory's responses to requests for admissions do not bind the United States. *See* 7-36 Moore's Federal Practice - Civil § 36.03 (2008); *see also Alipour v. State Auto. Mut. Ins. Co.*, 131 F.R.D. 213, 215 (N.D. Ga. 1990) ("The admission does not bind the party who requested it.") (quoting *Kittrick v. GAF Corp.,* 125 F.R.D. 103, 106 (M.D. Pa. 1989) (quoting C. Wright and A. Miller, Federal Practice and Procedure: Civil § 2264 at 741 (1970); *In re Air Crash at Charlotte*, 982 F. Supp. 1060, 1068 (D.S.C. 1996).  The United States, therefore, may introduce evidence that contradicts Emory's admissions.  Accordingly, Emory's response to the Government's request for admission does not raise a genuine factual issue concerning its residents' status as employees.

> **B.    The facts Emory cites to demonstrate an employer/employee relationship do not create a genuine issue of material fact.**

As discussed in the United States summary judgment brief, Emory's witnesses steadfastly refused to characterize the relationship between Emory and its medical residents as that of an employer and employees.  Emory attempts to minimize this by citing a treasury regulation that purportedly makes such "subjective" belief of the relationship irrelevant.  This regulation does no such thing, and Emory's selective quotation of it is misleading.

Emory quoted only the first sentence of the regulation. It states in its entirety:

> "If the relationship of employer and employee exists, the designation or description of the relationship by the parties as anything other than that of employer and employee is immaterial. Thus, if such relationship exists, it is of no consequence that the employee is designated as a partner, coadventurer, agent, independent contractor, or the like."

26 C.F.R. § 31.3121(d)-1(a)(3). This regulation, when read in its entirety, addresses employees' titles. In this case, therefore, the residents' title as "residents", as opposed to some other option, is irrelevant to the determination of whether they are employees or students. But, witnesses' descriptions of residents' roles at Emory are still relevant.

Indeed, the evidence Emory cites to demonstrate an employer/employee relationship does not contradict its witnesses' testimony to the contrary. Even now, Emory is unwilling to characterize the relationship it has with its residents as anything but purely academic. For example, as purported evidence of an employer/employee relationship, Emory states that it directed and controlled the residents "pursuant to a formal educational curriculum"; that it is the "institutional sponsor" of residency programs accredited by the ACGME; that a House Staff

manual set forth terms "for purposes of [residents'] clinical education"; that "[w]hen residents performed medical procedures with a service component, they did so pursuant to a formal course of study and under the supervision of Emory faculty." [D.E. 138 at 13-15]. None of the facts Emory listed show anything but a student/educator relationship.

Additionally, none of the cases Emory cites as support for the proposition that the residency program was the residents' common-law employer involved the taxpayers' witnesses insisting that residents are solely students – not employees – of the residency program. *See Center for Family Medicine v. United States,* 2008 WL 3245460, Civ. No. 05-4049 (D.S.D. Aug. 6, 2008); *Regents of the University of Minnesota v. United States,* 2008 WL 906799, Civ. No. 06-5084 (D. Minn. April 1, 2008); *United States v. Mayo Foundation*, 282 F. Supp.2d 997 (D. Minn. 2003). Moreover, the issue the courts were deciding in those cases was whether the residency programs themselves, or the hospitals at which residents worked, were properly considered the residents' employers. *See Center for Family Medicine,* 2008 WL 3245460 at \*6; *Regents of the University of Minnesota,* 2008 WL 906799 at \*4; *Mayo Foundation*, 282 F. Supp.2d at 1011-12. No one in those cases insisted, as Emory's witnesses have, that residents are not employees at all.

### III. Emory Has Not Proven That Its Residents Perform Services Within the Meaning of the Student Exception.

Emory asks the Court to simply assume that its residents perform "service" because it is a prerequisite for FICA taxation. But they support their claim with a record where all of its witnesses insist that the residents do not work for the University. It is true, as Emory states, that the student exception applies to "employees who *also* are students." [D.E. 138 at 2]. It is this basic premise, however, that Emory's witnesses consistently denied.

Emory's witnesses insist that the tasks the residents perform are purely educational; that they provide no benefit to the University, do not provide necessary components of patient care, and are not paid in compensation for their services. Even in its Response, Emory refused to characterize the "services" residents perform as anything but "patient-related activities that residents must learn and demonstrate during their residency training," and as being a "part of their formal curriculum at Emory." [D.E. 138 at 6, 17].

For purposes of the student exception, "service" cannot include simply anything that an individual does as part of an educational program. Participating in purely educational activities is not "service" at all. The student exception is

designed to exempt from FICA taxes students who are also working – in an employer/employee relationship – for their educational institution. It does not apply to any student who receives funds. Rather, it is specifically designed for students who receive compensation in exchange for work. Because Emory's witnesses have maintained that this is not the case, Emory cannot sustain its burden of proving that its residents perform "service" for purposes of the student exception.

## CONCLUSION

The very premise of the student exception is that it applies to students who also work as employees for their educational institution. If this foundational prerequisite is absent, no meaningful debate can be had as to whether the specifics of the student exception have been met. Although Emory's witnesses have insisted that medical residents are not employees of, and do not work for, the University, Emory nevertheless asks the Court to simply assume that the student exception's foundations are present. The Court should not do so if Emory's own witnesses state the opposite to be the case. The Court should therefore grant summary judgment in favor of the United States.

Dated: October 30, 2008            Respectfully submitted,

                                              DAVID E. NAHMIAS
                                              United States Attorney

                                              /s/   David Zisserson
                                              David Zisserson, VA Bar No. 68828
                                              John M. Bilheimer, Arkansas Bar No. 69003
                                              Brian R. Harris, Florida Bar No. 512001
                                              Katherine Walsh, Maryland Bar
                                              Trial Attorneys, U.S. Department of Justice
                                              P.O. Box 14198, Ben Franklin Station
                                              Washington, D.C.  20044
                                              Telephone: (202) 514-6479 (Zisserson)
                                              (202) 514-6070 (Bilheimer)
                                              (202) 514-6483 (Harris)
                                              (202) 353-7205 (Walsh)
                                              david.zisserson@usdoj.gov
                                              john.m.bilheimer@usdoj.gov
                                              brian.r.harris.@usdoj.gov
                                              katherine.walsh@usdoj.gov

# CERTIFICATE OF SERVICE

       I certify that on this 30th day of October, 2008, I filed the foregoing Reply to Plaintiff Emory University's Opposition to the United States' Motion for Summary Judgment with the Clerk of the Court using CM/ECF. I also certify that the foregoing is being served this day on the individuals listed below via transmission of Notices of Electronic Filing generated by CM/ECF.

                                                      /s/ David Zisserson
                                                      Trial Attorney, Tax Division
                                                      U.S. Department of Justice

| | |
|---|---|
| Brent F. Powell<br>Covington & Burling-DC<br>1201 Pennsylvania Avenue, NW<br>Washington, DC 20004<br>202-662-5376<br>Fax: 202-778-5376<br>Email: bpowell@cov.com | Henry R. Chalmers<br>Arnall Golden & Gregory - Atlanta<br>Suite 2100<br>171 17th Street, NW<br>Atlanta, GA 30363-1031<br>404-873-8646<br>Email: henry.chalmers@agg.com |
| Eli Hoory<br>Covington & Burling-DC<br>1201 Pennsylvania Avenue, NW<br>Washington, DC 20004<br>202-662-5305<br>Fax: 202-662-6291<br>Email: ehoory@cov.com | Kent B. Alexander<br>Emory University<br>Office of the General Counsel<br>201 Dowman Drive<br>401 Administration Building<br>Atlanta, GA 30322<br>404-727-6060 Direct |
| Eric C. Bosset<br>Covington & Burling-DC<br>1201 Pennsylvania Avenue, NW<br>Washington, DC 20004<br>202-662-5606<br>Fax: 202-662-6291<br>Email: ebosset@cov.com | Stephen D. Sencer<br>Emory University<br>Office of the General Counsel<br>201 Dowman Drive<br>Atlanta, GA 30322<br>404-727-2016 |